NATHAN MAYO, Com'nr. Agri., *et al.,* Members of Board of Commissioners of State Institutions, *et al.,* v. JOHN E. MATTHEWS.

150 So. 900.

Opinion Filed November 13, 1933.

*Cary D. Landis,* Attorney General, and *H. E. Carter,* Assistant for the State, and *Waller & Pepper,* for Appellants;

*John E. Matthews, In Propria Persona, S. P. Robineau,* *Raymond C. Horne, J. Tom Watson* and *Ernest Mason,* for Appellee.

PER CURIAM.—The bill of complaint herein, brought by a taxpayer, in effect alleges that the Governor and the State administrative officers, without authority of law, and without necessity for State purposes, contracted in September, 1931, to purchase a described block of land in the City of Tallahassee "one block east of the Capitol," for $21,000.00, on which to erect a chemical laboratory for the State; and prayed for a decree to annul the contract and to enjoin further payments from State funds, $8,000.00 having been paid.. By answer the Governor and other defendant State officers, constituting the Board of Commissioners of State Institutions, in effect aver facts to show the need of suitable land and structures for a chemical laboratory for State purposes and assert authority of law for the purchase of the land. The vendor of the land is a member of the State Senate.

The decree appealed from rendered on bill and answer under stipulation, adjudged the contract to be null and void as to the State and enjoined further payments on the contract from State funds.

The statutes provide for a State Chemist and assistants who are required to make inspections and analyses of ferti-

lizers and other commodities, Sections 212 (176), 216 (184), Compiled General Laws; and enact that "the Governor shall provide a suitable laboratory, furniture and all the necessary chemicals for the State Chemist out of any funds in the State Treasury not otherwise appropriated, the same to be paid back to the State Treasury out of the funds accruing from the inspection of fertilizers." Section 3821 (2412), Compiled General Laws. The State Board of Health is authorized "to establish, maintain and operate a plant for the protection and distribution of hog cholera serum." Section 3175 (2019), Compiled General Laws. Chapter 10149, Acts of 1925, provides for a Division of Inspection in the Department of the Commissioner of Agriculture, and for a "general inspection fund" "arising from fees authorized by law for oil inspection, food, drug and fertilizer inspection and citrus fruit inspection" to be used for expenses incurred in carrying out the provisions of the inspection Acts. See also Chapter 7905, Acts of 1919; Chapter 11998, Acts of 1927.

Chapter 15615, Acts of 1931 (Section 3966 of 1932 Supp. to C. G. L.), effective June 24, 1931, entitled an Act "enlarging the uses for which the general inspection fund may be used," makes further provision relating to a "general inspection fund, out of which" shall be paid "all expenses incurred in the enforcement of" the "inspection Acts of this State for which fees are collected, including acquirement of equipment and other property and the distribution of hog cholera serum when approved by the Board of Commissioners of State Institutions as necessary to more economically and promptly execute the agricultural fertilizer analysis and general inspection laws." This is in legal effect a continuing appropriation, so Section 4, Article IX of the Constitution is complied with, and Section 2, Article IX, is

not violated. See Amos v. Moseley, 74 Fla. 555, 77 So. 619. Chapter 15615 is not limited by Chapter 15719, the General Appropriation Act of 1931.

Chapter 15615 does not merely authorize expenditures from the general inspection fund for "all expenses incurred in the enforcement of" the inspection laws of the State, "including acquirement of equipment and other property" *for* "the distribution of hog cholera serum;" but it authorizes expenditures from such fund for "all expenses incurred in the enforcement of" the inspection laws of the State "including acquirement of equipment and other property *and the* distribution of hog cholera serum." Expenditures from the general inspection fund for equipment and other property have direct and necessary relation to providing a suitable laboratory for fertilizer and other analyses in enforcing the inspection and analysis laws of the State, even more than to "the distribution of hog cholera serum." Chapter 15615 enlarges the uses of the general inspection fund so as to provide revenue to meet the expenses incurred in executing the inspection and analysis provisions of other statutes. Among the other statutes is Section 3821, Compiled General Laws, which makes it the duty of the Governor to provide a suitable laboratory for the State Chemist.

The "acquirement of equipment and other property" to "provide a suitable laboratory" which may properly include suitable land, is at least as "necessary" to "execute the agricultural fertilizer analysis and general inspection laws," as is the "acquirement of equipment and other property" for "the distribution of hog cholera serum." The acquisition of suitable land, if not already owned by the State, is necessary in providing a suitable laboratory, but might not be necessary for "the distribution of hog cholera serum."

The words, "or other property" as used in Chapter 15615,

have reference to any property that is duly acquired and payment therefor from the general inspection fund of the State is duly "approved by the Board of Commissioners of State Institutions as necessary to more economically and promptly execute the agricultural fertilizer analysis and general inspection laws" of the State.

The Constitution provides that:

"The Governor shall be assisted by administrative officers as follows: A Secretary of State, Attorney General, Comptroller, Treasurer, Superintendent of Public Instruction, and Commissioner of Agriculture." Section 20, Article IV.

"The Commissioner of Agriculture shall perform such duties in relation to agriculture as may be prescribed by law; shall have supervision of all matters pertaining to the public lands under regulations prescribed by law, and shall keep the Bureau of Immigration. He shall also have supervision of the State Prison, and shall perform such other duties as may be prescribed by law." Section 26, Article IV.

"The Governor and the administrative officers of the Executive Department shall constitute a Board of Commissioners of State Institutions, which Board shall have supervision of all matters connected with such institutions in such manner as shall be prescribed by law." Section 17, Article IV.

Whether the command of Section 3821 (2412), Compiled General Laws, that "the Governor shall provide a suitable laboratory, furniture and all necessary chemicals for the State Chemist" involves an executive or administrative function, it is a continuing statutory duty which may be performed in accordance with the provisions of Chapter 15615, Acts of 1931, "enlarging the uses" of the "general inspection fund" of the State, to include payment

for "equipment and other property * * * when approved by the Board of Commissioners of State Institutions as necessary to * * * execute the agricultural fertilizer analysis and general inspection laws."

The Governor is a member of the Board of Commissioners of State Institutions, and he legally may, within his executive discretion and judgment, "provide a suitable laboratory * * * for the State Chemist," through the co-operation of such Board, particularly when the subsequent statute, Chapter 15615, requires expenses incurred in the enforcement of the fertilizer analysis and general inspection laws "including acquirement of equipment and other property," to be paid for from the general inspection fund of the State "when approved by the Board of Commissioners of State Institutions," a constitutional board having supervision of all State Institutions; and statutory provisions place the inspection department of the State government under the supervision of such constitutional board at least to the extent indicated by the statutes.

The quoted statutory provisions and the laboratory needs of the Division of Inspection in the Department of the Commissioner of Agriculture as shown by the record, afford a basis for the acquisition of appropriate land in order to "provide a suitable laboratory * * * for the State Chemist" "when approved by the Board of Commissioners of State Institutions as necessary to more economically and promptly execute the agricultural fertilizer analysis and general inspection laws." In view of the statutory duty of the Governor to provide a suitable laboratory for the State Chemist and of the shown need for such laboratory for the inspection department, the legislative intent in using the words, "equipment and other property," in authorizing expenditures for the inspection department, reasonably includes

needed and appropriate land for "a suitable laboratory" when approved by the Board of Commissioners of State Institutions as necessary for State inspection purposes. An obvious intent of the statutory enactments when considered together and in view of the purpose designed by the enactments, is to authorize the Governor and the constitutional Board of Commissioners of State Institutions to provide and to pay for from the general inspection fund of the State, "equipment and other property," including suitable and needed land on which to construct a suitable laboratory for the State Chemist, when in the judgment of such constitutional board it is "necessary to more economically and promptly execute the agricultural fertilizer analysis and general inspection laws" of the State. Balances remaining in the fund at the end of each year are to be disposed of as required by Section 3, Chapter 10149, Acts of 1925, Section 222, Compiled General Laws.

It is not made to appear that under the statutes and the common law of this State, the contract here challenged is either illegal or contrary to public policy. It is not shown that any statute conferring authority upon State officials to acquire property for State purposes was enacted to enable a member of the Legislature to sell property to the State. The member of the Legislature here is not a member of, or in any way connected with, the purchasing board. Nor is any factual illegality in making the contract here considered shown.

There is statutory authority for the Governor to provide a suitable laboratory for the State Chemist, and for the Board of Commissioners of State Institutions, a constitutional board, to approve payment for equipment and other property when in the judgment of the constitutional board such property is necessary to execute the analysis and in-

spection laws of the State, which property may include land suitable and necessary to the erection of such laboratory. No *mala fides* being asserted, the wisdom of the contract made to purchase land for the erection of a State chemical laboratory is not for judicial determination.

Decree reversed.

WHITFIELD, ELLIS, TERRELL and BUFORD, J. J., and JOHN U. BIRD, Circuit Judge, concur.

TERRELL, J. (concurring specially).—I agree to the majority opinion in so far as the power to purchase is conferred but I think the authorization to make payment for the purchase was from the general revenue fund rather than the inspection fund.

BROWN, J., concurs.